E-FILED
Tuesday, 30 July, 2019 10:05:48 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL W. CORAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 19-cv-1115-JES-JEH ) |
| GINO DEVELOPMENT, INC., a California corporation, and MENARD INC., a Wisconsin corporation, Individually and d/b/a MENARDS, | ) ) ) ) ) ) |
| Defendants. | ) |

# **ORDER AND OPINION**

Now before the Court are the following:

- Defendant Menard's Motion (Doc. 13) to Dismiss and Certify Manufacturer, and Plaintiff's Response (Doc. 16);

- Defendant Gino Development's Motion (Doc. 14) to Dismiss for Failure to State a Claim, and Plaintiff's Response (Doc. 15); and

- Plaintiff's Motion (Doc. 17) to Amend/Correct Complaint, and Defendants' Responses (Docs. 19, 20).

For the reasons set forth below, Plaintiff's Motion (Doc. 17) to Amend/Correct Complaint is GRANTED; Defendant Menard's Motion (Doc. 13) to Dismiss and Certify Manufacturer is GRANTED as to Count 4 (negligence) and Count 6 (implied warranty) and DENIED as to Count 5 (strict liability); and Defendant Gino Development's Motion (Doc. 14) to Dismiss for Failure to State a Claim is GRANTED as to Count 1 (negligence) and Count 3 (implied warranty) and DENIED as to Count 2 (strict liability).

1

## BACKGROUND

Plaintiff initially filed this action against Defendants Gino Development, Inc. ("Gino") and Menard, Inc. ("Menards") on February 13, 2019 in the Circuit Court of McLean County, Illinois. Doc. 1-1; *see also Coran v. Gino Development, Inc.*, No 2019-L-18 (McLean Cnty. Cir. Ct. Feb. 3, 2019). On April 3, 2019, Defendants removed the action to the United States District Court for the Central District of Illinois under 28 U.S.C. § 1441 based on the diverse citizenship of the parties. Doc. 1; 28 U.S.C. § 1332. The original complaint asserted six causes of action against Defendants. Count 1 alleged negligence against Gino; Count 2 alleged strict liability against Gino; Count 3 alleged a breach of implied UCC warranty against Gino; Count 4 alleged negligence against Menards; Count 5 alleged strict liability against Mendards; and Count 6 alleged a breach of implied UCC warranty against Menards. *See generally* Doc. 1-1. Following removal to this District Court, the named Defendants entered their appearances, certified the manufacturer of the allegedly defective product, and moved to dismiss Plaintiff's complaint. *See* Doc. 12 (affidavit certifying manufacturer); Docs. 13, 14 (motions to dismiss).

In his original complaint, Plaintiff alleged that he purchased a "Tool Shop 10 pc. Hole Saw Set" (hereinafter, the "hole saw") from a Menards store in Normal, Illinois. Doc. 1-1, at 3. It appears that Menards purchased the hole saw from Defendant Gino. Plaintiff further alleged in his complaint that on February 13, 2017, he used the hole saw to drill a hole in a piece of wood in a manner consistent with the written instructions and warnings on the package. *Id.* While Plaintiff was operating the hole saw, his hand came into contact with the spinning blades of the saw after the drill was disengaged, causing Plaintiff to sustain severe laceration injuries to his hand. *Id.* at 4. Plaintiff asserted that a portion of the hole saw attached to the mandrel became deformed during its use, causing the hole saw to continue to spin after the drill was disengaged.

Plaintiff alleged that Gino was negligent for failing to provide a hole saw of sufficient strength, durability, dimensions and material to prevent it from spinning after the drill was disengaged and to prevent it from deforming during proper use, failing to perform Rockwell hardness testing on the hole saw; distributing a hole saw of insufficient Rockwell hardness; failing to warn of the risk of deformity of the hole saw; and failing to warn of the risk of the hole saw spinning after the drill was disengaged. *Id*.

Plaintiff also alleged that Gino was strictly liable for selling the hole saw in an unreasonably dangerous condition because it failed to perform in the manner reasonably to be expected in light of the hole saw's nature and intended function, and because the dangers outweighed the utilities of the saw. *Id*. at 5–6.

With respect to the implied warranty claim, Plaintiff alleged that Gino impliedly warrantied the hole saw was of merchantable quality under the Uniform Commercial Code, and breached that implied warranty by selling a saw that was not of merchantable quality. *Id*. at 6–7. Plaintiff brings materially similar claims against Menards. *Id*. at 8–13. Plaintiff did not name the actual manufacturer of the hole saw in his original complaint.

On April 22, 2019, Defendants filed Motions to Dismiss. Docs. 13, 14. In Defendant Gino's Motion to Dismiss, it argues that Plaintiff's negligence claim (Count 1), strict liability claim (Count 2), and breach of implied UCC warranty claim (Count 3) should be dismissed for failure to state a claim and further argues that Plaintiff's strict liability claim against Gino must be dismissed under Federal Rule of Civil Procedure 12(c) and the Illinois Seller's Exception, 735 ILCS 5/2–621(a)–(b). Doc. 14.

In Defendant Menards' Motion to Dismiss, Menards indicates that it has certified the identity of the manufacturer of the hole saw as Hangzhou Uni-Hosen Electromechanical Tools

3

Co., Ltd. ("Hangzhou"), and similarly asks the Court to dismiss the strict liability claim against it pursuant to the Illinois Seller's Exception. Doc. 13. Defendant Menards did not move to dismiss the remaining claims against it at the time it filed its Motion to Dismiss. *But see* Doc. 20, at 2 (Menards' Response to Plaintiff's Motion to Amend, seeking to join Defendant Gino's Motion to Dismiss as to all Counts).

On May 6, 2019, while the Defendants' Motions to Dismiss remained pending, Plaintiff filed a Motion for Leave to File First Amended Complaint at Law and Add Additional Defendant. Doc. 17. Therein, Plaintiff asks to amend his complaint to add Hangzhou as a Defendant. Plaintiff attached his proposed Amended Complaint as an exhibit to his Motion. *See* Doc. 17-4. In his Amended Complaint, Plaintiff realleges the negligence, strict liability, and implied warranty claims against Defendants Gino and Menards, and asserts new negligence, strict liability, and implied warranty claims (Counts 7, 8, and 9, respectively) against the manufacturer, Hangzhou. Doc. 17-4, at 12–18.

Both Gino and Menards filed Responses to Plaintiff's Motion for Leave to File First Amended Complaint at Law and Add Additional Defendant. Docs. 19, 20. Gino asserts in its Response that the same arguments raised in its prior Motion to Dismiss apply equally to the allegations in Plaintiff's Amended Complaint, and thus "revives" its prior Motion. Doc. 19. Menards similarly asserts in its Response that it "revives" its prior Motion to Dismiss because the same arguments raised in its prior Motion to Dismiss apply equally to the allegations in Plaintiff's Amended Complaint. Further, Menards now asks to join Defendant Gino's Motion to Dismiss in full, asserting that the counts against each Defendant are identical, and "in the interest of judicial economy, Menard[s] moves for dismissal for failure to state a cause of action." Doc. 20, at 2. This Order follows.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the plaintiff. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## DISCUSSION

1. **Plaintiff's Motion for Leave to File First Amended Complaint at Law and Add Additional Defendant (Doc. 17)**

Plaintiff seeks leave to file an amended complaint adding new negligence, strict liability, and implied warranty claims (Counts 7, 8, and 9, respectively) against the manufacturer, Hangzhou. *See* Doc. 17-4, at 12–18. Rule 15 of the Federal Rules of Civil Procedure governs amendment of pleadings. Plaintiff does not allege that he may amend his complaint as a matter of right, *see* Fed. R. Civ. P. 15(a)(1), so his proposed amendments to the complaint require leave of court. Fed. R. Civ. P. 15(a)(2). However, Rule 15 sets forth a liberal standard—"The Court should freely give leave when justice so requires." *Id*. Here, Plaintiff's proposed Amended Complaint seeks to add as a Defendant the manufacturer of the allegedly defective product based

on certification by Defendants Gino and Menards that Hangzhou is indeed the manufacturer of the hole saw. Plaintiff's proposed amendment is also timely, as it was filed just over a month after this case was removed to federal court. Finally, Defendants Gino and Menards will suffer no prejudice from the proposed amendment, as they have indicated that the arguments set forth in their prior Motions to Dismiss apply equally to the claims in Plaintiff's Amended Complaint. Accordingly, the Court grants Plaintiff's Motion (Doc. 17) for Leave to File First Amended Complaint at Law and Add Additional Defendant. Plaintiff shall effect service upon Defendant Hangzhou in accordance with the applicable federal rules. The Clerk is directed to file the exhibit containing Plaintiff's proposed Amended Complaint (Doc. 17-4) on the docket as a separate document.

   **2. Motions to Dismiss by Defendants Gino and Menards**

Next, the Court turns to the Motions to Dismiss filed by Gino and Menards. Docs. 13, 14. The Court will first address the Defendants' common contention that dismissal of the strict liability counts is appropriate under Rule 12(c) of the Federal Rules of Civil Procedure and the Illinois statute governing products liability actions, which the Court will hereinafter refer to as the "Illinois Distributor Statute." 735 ILCS 5/2-621.

   *a. The Illinois Distributor Statute*

Plaintiff's Amended Complaint includes claims of strict liability against Hangzhou, the manufacturer of the hole saw, Gino, the distributor, and Menards, the retailer. In Illinois, 735 ILCS 5/2-621 governs the liability of non-manufactures in strict liability actions. "Although the Distributor Statute falls within the Illinois Code of Civil Procedure, federal courts must apply the rule because, under the test articulated by *Hanna v. Plumer*, its application implicates 'the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable

administration of the laws.'" *Whelchel v. Briggs & Stratton Corp.*, 850 F. Supp. 2d 926, 932 (S.D. Ill. 2012). The Illinois Distributor Statute provides, in relevant part:

> (a) In any product liability action based on any theory or doctrine commenced or maintained against a defendant or defendants other than the manufacturer, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage. The commencement of a product liability action based on any theory or doctrine against such defendant or defendants shall toll the applicable statute of limitation and statute of repose relative to the defendant or defendants for purposes of asserting a strict liability in tort cause of action.
>
> (b) Once the plaintiff has filed a complaint against the manufacturer or manufacturers, and the manufacturer or manufacturers have or are required to have answered or otherwise pleaded, the court shall order the dismissal of a product liability action based on any theory or doctrine against the certifying defendant or defendants, provided the certifying defendant or defendants are not within the categories set forth in subsection (c) of this Section.…
>
> The plaintiff may at any time subsequent to the dismissal move to vacate the order of dismissal and reinstate the certifying defendant or defendants, provided plaintiff can show one or more of the following:
>
> > (1) That the applicable period of statute of limitation or statute of repose bars the assertion of a cause of action against the manufacturer or manufacturers of the product allegedly causing the injury, death or damage; or
> > (2) That the identity of the manufacturer given to the plaintiff by the certifying defendant or defendants was incorrect.…
> > (3) That the manufacturer no longer exists, cannot be subject to the jurisdiction of the courts of this State, or, despite due diligence, the manufacturer is not amenable to service of process.…
>
> (c) A court shall not enter a dismissal order relative to any certifying defendant or defendants other than the manufacturer even though full compliance with subsection (a) of this Section has been made where the plaintiff can show one or more of the following:
> > (1) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage; or
> > (2) That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage.…

735 ILCS 5/2-621.

"At common law, all entities in the distributive chain of an allegedly defective product, including manufacturers, sellers, wholesalers, distributors, and lessors of the product, are strictly liable in the products liability actions for injuries resulting from that product." *Brobbey v. Enter. Leasing Co.*, 404 Ill. App. 3d 420, 428 (1st Dist. 2010). The Illinois Distributor Statute generally provides for the dismissal of a non-manufacturer such as Gino or Menards after they certify the identity of the manufacturer. *See* 735 ILCS 5/2-621(b). However, the certifying defendant's dismissal is subject to subsection (c), which prohibits a court from dismissing the non-manufacturer defendant if the plaintiff can show that the defendant exercised significant control over the design or manufacture of the product, provided warnings to the manufacturer about the alleged defect, or had actual knowledge of the defect in the product. § 2-621(c).

Here, both Gino and Menards have moved to dismiss the strict liability claims against them, arguing that, since they have entered their appearances and certified the identity of the manufacturer, and Plaintiff has subsequently filed an Amended Complaint alleging strict liability claims against Hangzhou, they are entitled to dismissal of the strict liability claims against them under the Illinois Distributor Statute. *See, e.g.,* Doc. 19, at 2; Doc. 20, at 2. Resolution of this issue turns on application of the Federal Rules of Civil Procedure to the plain language of the statute. Under subsection (b) of the statute,

> Once the plaintiff has filed a complaint against the manufacturer or manufacturers, <u>and the manufacturer or manufacturers have or are required to have answered or otherwise pleaded</u>, the court shall order the dismissal of a product liability action based on any theory or doctrine against the certifying defendant or defendants.…

735 ILCS 5/2-621(b) (emphasis added). Thus, setting aside for the moment any exceptions to the rule set forth in subsection (b),[1] Gino and Menards are entitled to dismissal of the strict liability

---

[1] *See* 735 ILCS 5/2-621(c) (setting forth various circumstances where the Court should not allow dismissal of claims against a certifying defendant).

claims against them once Hangzhou "ha[s] or [is] required to have answered or otherwise pleaded." *Id*. And under Rule 12(a)(1)(A) of the Federal Rules of Civil Procedure, Hangzhou's duty to answer or otherwise plead to Plaintiff's Amended Complaint is triggered by Plaintiff serving Hangzhou or by Hangzhou waiving service. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) (defendant required to answer within 21 days after being served with summons and complaint) and (ii) (foreign defendant required to answer within 90 days after request for waiver of service sent). Thus, until Hangzhou has been served or waives service, dismissal of the strict liability claims against Gino and Menards under the Illinois Distributor Statute is premature. If and when Hangzhou is served, Defendants Gino and Menards may renew their request for dismissal of the strict liability claims against them.

   b. *Defendants' Motions to Dismiss for Failure to State a Claim*

Defendants also move to dismiss Plaintiff's Amended Complaint for failure to state a claim under Federal Rule of Civil 12(b)(6). In their Motions, Defendants argue that Plaintiff fails to state a claim with respect to the negligence, strict liability, and implied warranty claims. *See generally* Docs. 13, 14.[2] The arguments raised by Gino and Menards in their Motions are materially identical. Thus, for the sake of clarity, the Court will refer only to Gino's Motion and Plaintiff's Response to Gino's Motion in the following sections. *See* Docs. 14, 15.

   i. Negligence

In his Amended Complaint, Plaintiff alleges that Gino "was engaged in the business of manufacturing, designing, distributing and selling various tool parts, and did manufacture, design, distribute and sell certain tool parts that said Defendant labeled and/or branded as

---

[2] Defendant Menards did not file a Rule 12(b)(6) motion, but merely indicated in its Response (Doc. 20) to Plaintiff's Motion for Leave to File Amended Complaint that it sought to join in the entirety Gino's Motion. At this point, because the issues raised by Gino apply equally to Menards, the Court will analyze the arguments therein with respect to both Defendants.

9

"TOOL SHOP 10 PC. HOLE SAW SET." Doc. 17-4, at 1. Plaintiff makes this same allegation against Menards and Hangzhou. *Id.* at 7, 13. While Rule 8 of the Federal Rules of Civil Procedure generally allows for pleading in the alternative, here, Plaintiff's assertion that Gino, Menards, and Hangzhou each manufactured, designed, distributed, and sold the hole saw amounts to "alternative pleading with a vengeance." *See Wilson v. City of Chicago*, 120 F.3d 681, 687 (7th Cir. 1997). This is especially so given that at the time Plaintiff moved to file his Amended Complaint, Gino had affirmed that it was the distributor of the hole saw (Doc. 14-1) and Menards had certified that it was the seller of the hole saw and that the hole saw was manufactured by Hangzhou (Doc. 12). Thus, where Plaintiff fails to tie specific allegations to specific Defendants, the Court will construe Plaintiff's blanket allegation against each Defendant only to the extent that the allegation is consistent with the pleadings (Hangzhou manufactured, Gino distributed, Menards sold, etc.).

Moving forward, Plaintiff alleges that Gino "had a duty to … distribute and sell tool parts, including [the hole saw], that were safe and would not cause harm to foreseeable users, including the Plaintiff" and to "provide instructions and warnings concerning the proper use of the tool parts it … distributed and sold, including [the hole saw] … and to provide adequate warnings of the dangers associated with using said tool parts." Doc. 17-4, at 2. Gino sold, supplied, and delivered the hole saw to Menards. Plaintiff purchased the hole saw from Menards and "used it in a manner consistent with any written instructions and warnings provided on or inside the package the saw was sold in." When Plaintiff used the saw on February 13, 2017, "the portion of the hole saw attached to the mandrel became deformed, thereby causing the hole saw to continue to spin after the drill … was disengaged." *Id*. at 2–3. Plaintiff's hand came into contact with the spinning hole saw after the drill was disengaged, causing Plaintiff to sustain

severe laceration injuries to his hand. Plaintiff alleges that Gino was negligent in the following ways:

  a. Failed to provide a hole saw of sufficient strength, durability, dimensions and material to prevent it from spinning after the drill used with the hole saw was disengaged;
  b. Failed to provide a hole saw of sufficient strength, durability, dimensions and material to prevent it from deforming during proper use;
  c. Failed to properly perform Rockwell hardness testing on the hole saw and materials used to manufacture said hole saw;
  d. Manufactured, sold, distributed and delivered a hole saw of insufficient Rockwell hardness to prevent it from deforming during proper use;
  e. Failed to warn of the risk of deformity of the hole saw and the danger posed thereby;
  f. Failed to warn of the risk of the hole saw spinning after the drill was disengaged, and the danger posed thereby; and
  g. Was otherwise negligent.

Doc. 17-4, at 3. Finally, Plaintiff alleges that his injury was the direct and proximate result of the negligent acts alleged above. *Id*.

  Gino asserts that Plaintiff fails to adequately allege a negligence claim against it. Doc. 14, at 10. Specifically, Gino argues that its alleged failures to provide instructions and warnings are insufficient to state a negligence claim against Gino because Gino "did not owe any duty concerning open and obvious dangers." *Id*. Gino acknowledges that, under Illinois law, a seller must warn the buyer of a product's dangerous propensities and any risk of harm known to the seller based on those propensities. *Id*. at 11 (citing *Bates v. Richland Sales Corp.*, 346 Ill. App. 3d 223, 233 (4th Dist. 2004)). However, Gino asserts that the duty to warn arises only where there is knowledge, actual or constructive, and the defendant knew or should have known that harm might or could occur if no warning is given. *Id*. (citing *Oberg v. Adcance Transformer Co.*, 210 Ill. App. 3d 246, 249 (1st Dist. 1991)). Gino argues that Plaintiff's Amended Complaint is devoid of any allegation that Gino knew or should have known that the hole saw was dangerous in a manner that could cause the injuries alleged by Plaintiff.

In Plaintiff's Response to Gino's Motion to Dismiss, he argues in summary fashion that he sufficiently alleged a negligence claim against Gino because he alleges "(a) how Mr. Coran was injured by the product, (b) how the product malfunctioned, (c) what could have been done to prevent the product from malfunctioning, and (d) that Gino failed to warn of the dangerous condition of the product." Doc. 15, at 3. Plaintiff then asserts that additional facts will be developed during discovery and concludes that he "is not required to prove his case at the pleadings stage, however, but is instead just required to plead sufficient facts to make out a cause of action." *Id*.

"To establish a cause of action for negligence, a plaintiff must show the following elements: the existence of a legal duty owed by the defendant to the plaintiff; breach of that duty; a resulting compensable injury to the plaintiff; and that the breach was the proximate cause of the injury." *Brobbey v. Enter. Leasing Co. of Chicago*, 404 Ill. App. 3d 420, 430 (1st Dist. 2010). However, "[u]nlike strict liability, under a theory of negligence it is not sufficient to show that the product is defective or not reasonably safe; the plaintiff must also show that the defendant breached a duty owed to plaintiff." *Id*. (citing *Cornstubble v. Ford Motor Co.,* 178 Ill. App. 3d 20, 24 (5th Dist. 1988)). Thus, "not only must plaintiff prove that the product was not reasonably safe, but also that the defendant knew, or in the exercise of ordinary care should have known, of that unsafe condition." *Id*. (citing *Cornstubble*, 178 Ill. App. 3d at 24). In other words, "[t]he key distinction between a negligence and strict liability claim is the concept of fault, as a defendant's fault, in addition to the condition of the product, is at issue in a negligence claim." *Smith v. Phoenix Seating Sys., LLC*, 894 F. Supp. 2d 1088, 1098 (S.D. Ill. 2012).

Here, Plaintiff fails to allege in his Amended Complaint that Gino knew or should have known of any alleged unsafe condition relating to the hole saw. *Brobbey*, 404 Ill. App. 3d at 430

("[N]ot only must plaintiff prove that the product was not reasonably safe, but also that the defendant knew, or in the exercise of ordinary care should have known, of that unsafe condition."). In fact, the only reference to "knowledge" in Plaintiff's Amended Complaint comes in the (unnecessary) attestation as to damages at the end of the document. Doc. 17-4, at 19. Because Plaintiff does not allege an essential element of a negligence claim—that Gino knew or should have known of any alleged unsafe condition relating to the hole saw—his negligence claim against Gino must be dismissed. Similarly, because the same analysis would apply equally to Plaintiff's negligence claim against Menards, the Court will also dismiss Plaintiff's negligence claim against Menards.[3]

      ii. Strict Liability

In his Amended Complaint, Plaintiff states that Gino (and Menards) are strictly liable based on the following allegations:

> That on and before February 13, 2017, the "TOOL SHOP 10 PC. HOLE SAW SET", as manufactured, designed, distributed and sold, was in an unreasonably dangerous condition in that it could not be used with safety, and specifically that the Defendant, GINO DEVELOPMENT, INC., individually and by and through its agents, acted or failed to act in one or more of the following ways:
>
>     a. Failed to provide a hole saw of sufficient strength, durability, dimensions and material to prevent it from spinning after the drill used with the hole saw was disengaged;
>     b. Failed to provide a hole saw of sufficient strength, durability, dimensions and material to prevent it from deforming during proper use;
>     c. Failed to properly perform Rockwell hardness testing on the hole saw and materials used to manufacture said hole saw;
>     d. Manufactured, sold, distributed and delivered a hole saw of insufficient Rockwell hardness to prevent it from deforming during proper use;
>     e. Failed to warn of the risk of deformity of the hole saw and the danger posed thereby;

---

[3] Because it appears that the deficient pleading could be cured by amendment, the Court will allow Plaintiff another opportunity to amend his complaint within 21 days of this Order, if he has a good faith basis for doing so.

> f. Failed to warn of the risk of the hole saw spinning after the drill was disengaged, and the danger posed thereby; and
> g. Was otherwise negligent.
>
> That one or more of the aforementioned defects existed when the "TOOL SHOP 10 PC. HOLE SAW SET" left this defendant's control, making the "TOOL SHOP 10 PC. HOLE SAW SET" unreasonably dangerous because it failed to perform in the manner reasonably to be expected in light of the "TOOL SHOP 10 PC. HOLE SAW SET"'s nature and intended function and/or because the dangers outweighed the utilities of said item.
>
> That as a direct and proximate result of the aforesaid unreasonably dangerous condition of the "TOOL SHOP 10 PC. HOLE SAW SET", Plaintiff, MICHAEL W. CORAN, sustained injuries to his hand when he used the "TOOL SHOP 10 PC. HOLE SAW SET".

Doc. 17-4, at 4–5.

Defendants argue that Plaintiff's strict liability claims against them should be dismissed for failure to state a claim. Doc. 14, at 6–10. Specifically, Gino argues that Plaintiff's strict liability claim "amounts to nothing more than conclusory allegations" and Gino had no duty to warn Plaintiff of what Gino characterizes as an open and obvious danger of injury that would result from a bare hand touching a moving saw. Doc. 14, at 8–9. Gino further argues that Plaintiff's allegation that Gino failed to perform Rockwell hardness testing on the saw is insufficient to hold Gino strictly liable because Plaintiff "provides no facts as to what type of testing would have prevented Plaintiff's injuries or what hardness was necessary to prevent his injuries." *Id*. at 9. Additionally, Plaintiff's assertion that Gino failed to warn Plaintiff of the risk of deformity is insufficient, in Gino's view, to state a strict liability claim because the allegation "fails to provide any factual detail as to what warnings or instructions were provided and/or how the warnings and/or instructions were inadequate." *Id*. Finally, Gino claims that Plaintiff's allegation that the saw was of "insufficient hardness" fails because Plaintiff does not assert what

14

hardness was necessary. *Id*. at 10. Plaintiff did not respond to this portion of Gino's Motion to Dismiss. *See generally* Doc. 15.

"Under Illinois law, it is well-settled that recovery in a strict product liability action requires a plaintiff plead and prove that 'the injury complained of resulted from a condition of the product, that the condition was unreasonably dangerous, and that it existed at the time the product left the manufacturer's control.'" *Smith v. Phoenix Seating Sys., LLC*, 894 F. Supp. 2d 1088, 1093 (S.D. Ill. 2012) (quoting *Mikolajczyk v. Ford Motor Co.*, 231 Ill.2d 516 (2008)). A plaintiff may prove that a product is unreasonably dangerous by showing "a physical defect, a design defect, or a failure of the manufacturer to warn of the danger or to instruct on the proper use of the product." *Id.* Under Illinois law, "all persons in the distributive chain are liable for injuries resulting from a defective product, including suppliers, distributors, wholesalers[,] and retailers." *Id*. (citing *Hammond v. North Am. Asbestos Corp.*, 97 Ill.2d 195 (1983)).

Here, Plaintiff alleges that the hole saw was defectively designed or manufactured because the portion of the hole saw attached to the mandrel became deformed during normal use, causing the saw to continue to spin after the drill was disengaged. He has thus sufficiently alleged the first element of a strict product liability claim—that the injury complained of resulted from a condition of the product. *Smith*, 894 F. Supp. 2d at 1093. Likewise, Plaintiff has alleged that the product "was in an unreasonably dangerous condition in that it could not be used with safety …" because Defendants "[f]ailed to provide a hole saw of sufficient strength, durability, dimensions and material to prevent it from spinning after the drill used with the hole saw was disengaged; [f]ailed to provide a hole saw of sufficient strength, durability, dimensions and material to prevent it from deforming during proper use; [f]ailed to properly perform Rockwell hardness testing on the hole saw and materials used to manufacture said hole saw; … sold,

15

distributed and delivered a hole saw of insufficient Rockwell hardness to prevent it from deforming during proper use; [f]ailed to warn of the risk of deformity of the hole saw and the danger posed thereby; [f]ailed to warn of the risk of the hole saw spinning after the drill was disengaged, and the danger posed thereby; and [w]as otherwise negligent. The Court believes the above allegations are sufficient to allege a strict products liability claim against Defendants and to provide Defendants sufficient notice as to how the hole saw's condition is alleged to be unreasonably dangerous. *Smith*, 894 F. Supp. 2d at 1093. Accordingly, the Court denies Defendants' Motions to Dismiss with respect to the strict products liability claims.

### iii. Implied Warranty

Plaintiff alleges in his Amended Complaint that Defendants breached an implied warranty under the Uniform Commercial Code. Doc. 17-4, at 6–7, 11–12. Specifically, Plaintiff alleges Gino (and Menards) impliedly warrantied that the hole saw was of merchantable quality under the UCC, and breached the implied warranty because the saw was not of merchantable quality. *Id*.

Gino argues that the above allegations are insufficient to establish an implied UCC warranty claim because Plaintiff fails to allege how the hole saw was not of merchantable quality. Doc. 14, at 12. Gino cites an Illinois statute codifying the provisions of the UCC relating to implied warranties of merchantability, which provides, in relevant part:

(2) Goods to be merchantable must be at least such as
    a. pass without objection in the trade under the contract description; and
    b. in the case of fungible goods, are of fair average quality within the description; and
    c. are fit for the ordinary purposes for which such goods are used; and
    d. run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
    e. are adequately contained, packaged, and labeled as the agreement may require; and

> f. conform to the promises or affirmations of fact made on the container or label if any.

810 ILCS 5/2-314. Plaintiff failed to address Gino's argument in its Response. *See generally* Doc. 15.

To state a claim under Illinois law for breach of an implied warranty of merchantability, "a plaintiff must allege that '(1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect.' " *See, e.g., CHS Acquisition Corp. v. Watson Coatings, Inc.*, No. 17-CV-4993, 2018 WL 3970137, at *7 (N.D. Ill. Aug. 20, 2018) (quoting *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 741 (N.D. Ill. 2015)). In order for goods to be merchantable, they must be, *inter alia*, fit for the ordinary purposes for which they are used. 810 ILCS 5/2-314; *Baldwin*, 78 F. Supp. 3d at 741.

Here, Plaintiff alleges in conclusory fashion the first element of a claim for breach of an implied warranty of merchantability; i.e., that Defendants sold goods that were not merchantable at the time of sale. Conclusory allegations that merely recite the elements of a cause of action are insufficient. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Given the nature of Plaintiff's other claims and the allegations of defective design and manufacture, it is likely that Plaintiff could amend his breach of implied warranty claim to add additional factual allegations that would suffice to establish, for the purposes of a motion to dismiss, that the hole saw was not of merchantable quality or fit for the ordinary purposes for which it is used. However, as currently alleged, Plaintiff's conclusory statement that the saw was not merchantable, without more, is insufficient.

Second, Plaintiff must allege he suffered damages as a result of the defective goods. *Baldwin*, 78 F. Supp. 3d at 741. He has, and Defendants do not appear to argue otherwise. Finally, Plaintiff must allege that he gave Defendants notice of the defect. *Id*. Plaintiff fails to make such an allegation in his Amended Complaint, but Defendants do not argue a lack of notice as a basis for their Motions to Dismiss, and none of the parties provided the Court with any argument or citation to authority on this point. The Court will dismiss the implied warranty claims against Defendants because Plaintiff has failed to adequately plead the first and third elements of these claims. However, because it appears that the deficient pleading could be cured by amendment, the Court will allow Plaintiff another opportunity to amend his complaint within 21 days of this Order, if he has a good faith basis for doing so. Should Defendants elect to file another motion to dismiss, Plaintiff is cautioned that a failure to respond to the alleged deficiencies will result in dismissal. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 718, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").

## CONCLUSION

For the reasons set forth above,

- Plaintiff's Motion (Doc. 17) to Amend/Correct Complaint is GRANTED. The Clerk is DIRECTED to docket Plaintiff's Amended Complaint (Doc. 17-4) as a new, separate docket entry. Plaintiff shall effect service upon Defendant Hangzhou in accordance with the applicable federal rules.

- Defendant Menard's Motion (Doc. 13) to Dismiss and Certify Manufacturer is GRANTED as to Count 4 (negligence) and Count 6 (implied warranty) and DENIED as to Count 5 (strict liability).

- Defendant Gino Development's Motion (Doc. 14) to Dismiss for Failure to State a Claim is GRANTED as to Count 1 (negligence) and Count 3 (implied warranty) and DENIED as to Count 2 (strict liability).

- Plaintiff may, if he has a good faith basis for doing so, file an amended complaint curing the deficiencies in the negligence and implied warranty claims within 21 days of this Order.

Signed on this 30th day of July, 2019.

s/ James E. Shadid
James E. Shadid
United States District Judge
